UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X
                                                                    ::
SAWSAAN TABBAA, HASSAN SHIBLY, ASMAA              :        05 CV 1918 (ARR)
ELSHINAWY, KAREMA ATASSI, and GALEB              :
RIZEK,                                            :        NOT FOR ELECTRONIC
                                                  :        OR PRINT
                          Plaintiffs,             :        PUBLICATION
                                                  :
                                                  :        OPINION AND ORDER
         -against-                                :
                                                  :
MICHAEL CHERTOFF, Secretary of the Department of  :
Homeland Security, ROBERT C. BONNER,             X
Commissioner of United States Customs and Border
Protection, MICHAEL D'AMBROSIO, United States
Customs and Border Protection, JOSEPH J. WILSON,
Buffalo Port Director for United States Customs and
Border Protection,

                          Defendants.

         ---------------------------------------------------------

ROSS, United States District Judge:

        Plaintiffs Sawsaan Tabbaa, Hassan Shibly, Asmaa Elshinawy, Karema Atassi, and

Galeb Rizek have brought suit against Michael Chertoff, Secretary of the Department of

Homeland Security, Robert C. Bonner, Commissioner of United States Customs and Border

Protection, Michael D'Ambrosio, of United States Customs and Border Protection, and Joseph

J. Wilson, Buffalo Port Director for United States Customs and Border Protection, alleging

violations of their First Amendment speech, assembly, and free exercise rights, their Fourth

Amendment right to be free from unreasonable searches and seizures, and their rights under the

Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb et seq. Plaintiffs seek

declaratory and injunctive relief. Defendants have filed a motion to dismiss pursuant to Fed.

R. Civ. P. 12(b)(1) or, in the alternative, to transfer venue to the United States District Court for the Western District of New York pursuant to 28 U.S.C. § 1404(a). For the reasons stated below, the court grants defendants' motion to transfer venue.

## BACKGROUND

The following facts are drawn from the complaint. Four of the five plaintiffs reside in the Western District of New York, while one plaintiff resides in Brooklyn, within the Eastern District. Two of the defendants reside in the Western District, and the remaining two reside in Washington, D.C. Each of the plaintiffs, who are all American citizens and had either a United States passport or a New York state driver's license, attended the Reviving the Islamic Spirit ("RIS") Conference in Toronto, Canada in December 2004. At the conclusion of the conference, the plaintiffs arrived at the border near Buffalo, New York, in the Western District of New York, in order to return to the United States. Agents of the United States Customs and Border Protection ("CBP") stopped the plaintiffs upon learning that they had attended the RIS Conference. The CBP agents detained plaintiffs, as well as other returning conference attendees, for several hours. During the detention, the agents prohibited plaintiffs from using mobile telephones to contact attorneys, family members, or the media, ultimately seizing some of the plaintiffs' telephones. The agents searched the plaintiffs, interrogated them, and digitally fingerprinted and photographed them. The agents also searched the plaintiffs' vehicles. The plaintiffs were ultimately permitted to enter the United States.

## DISCUSSION

Motions to transfer venue from one federal district court to another are governed by 28 U.S.C. § 1404(a), which reads: "For the convenience of parties and witnesses, in the interest of

justice, a district court may transfer any civil action to any other district or division where it might have been brought." The party making the motion bears the burden of "clearly" establishing that transfer is appropriate and that the motion should be granted. See Factors, Etc., Inc. v. Pro Arts, Inc., 759 F.2d 215, 218-19 (2d Cir. 1978), cert. denied, 440 U.S. 908 (1979).

The inquiry on a motion to transfer has two steps. First, the court must establish that the action "might have been brought" in the district to which the moving party seeks transfer. If it could have been brought there, the court inquires as to whether, considering "the convenience of parties and witnesses" and "the interest of justice," a transfer is appropriate. See Hernandez v. Graebel Van Lines, 761 F.Supp. 983, 986 (E.D.N.Y. 1991) (citing Schneider v. Sears, 265 F.Supp. 257, 261 (S.D.N.Y. 1967)).

In the instant case, the parties do not dispute, and the court finds, that this action could have been brought in the Western District of New York. The court must thus consider whether transfer is appropriate under the second step of the analysis. Defendants, as the moving party, bear the burden of establishing by clear and convincing evidence that transfer is appropriate. Excelsior Designs, Inc. v. Sheres, 291 F.Supp.2d 181, 185 (E.D.N.Y. 2003). Courts consider a number of factors in making this determination, none of which is individually dispositive. Citigroup, Inc. v. City Holding Co., 97 F.Supp.2d 549, 561 (S.D.N.Y. 2000). These factors include: (1) the convenience of the parties; (2) the relative means of the parties; (3) the convenience of non-party witnesses and the availability of process to compel the attendance of unwilling witnesses; (4) the locus of operative facts and the relative ease of access to sources of proof; (5) the plaintiff's choice of forum; (6) the forum court's familiarity with the

substantive law; (7) calendar congestion; and (8) the interests of justice. <u>Aktiengelsellschaft v.</u>
<u>Milwaukee Electric Tool Corp.</u>, No. 04 Civ. 629 (ARR)(ASC), 2004 WL 1812821, *4
(E.D.N.Y. July 19, 2004).

I.      <u>The Convenience of the Parties</u>

   Four of the five plaintiffs in this case reside in the Western District, and one resides in
the Eastern District.  Two of the defendants reside in the Western District, and two reside in
Washington, D.C.  Thus, only one party resides in the Eastern District.  Plaintiffs contend that
defendants, as agents of the federal government, would not incur significant personal expense
as a result of defending this litigation in the Eastern District, noting that "the United States is
able to litigate in any district." <u>Jones v. United States</u>, No. 02 Civ. 1017 (JG), 2002 WL
2003191, *2 (E.D.N.Y. Aug. 26, 2002).  The plaintiffs' contention that their attorneys would
be inconvenienced were the case to be transferred to the Western District is addressed below,
in the discussion of what the interests of justice would require.  In any event, "convenience of
counsel is not a consideration in the transfer analysis." <u>Bionx Implants, Inc. v. Biomet, Inc.</u>,
No. 99 Civ. 740 (WHP), 1999 WL 342306, *4 (S.D.N.Y. May 27, 1999) (citing <u>Cento Group,</u>
<u>S.p.A. v. OroAmerica, Inc.</u>, 822 F.Supp. 1058, 1060 61 (S.D.N.Y. 1993)).

   Although plaintiffs have chosen to file their complaint in the Eastern District, the court
must nonetheless consider the plaintiffs' residence in making its determination and take into
account that four of the five plaintiffs reside in the Western District.  Moreover, although the
United States has attorneys resident in both the Eastern and the Western Districts, and could
therefore litigate the case in either district, the court recognizes the more important factor to be
that two of the four defendants, who are federal employees, reside in the Western District.

This is not a case that shifts the inconvenience from one party to another but rather one in which transfer would result in added convenience to nearly all of the parties involved, as only one of the parties resides in the Eastern District, six reside in the Western District, and two reside in Washington, D.C. The court finds that this factor weighs in favor of transfer.

II.     The Relative Means of the Parties

Defendants assert that this factor does not favor one district over the other, and plaintiffs have presented no argument for consideration. As a result, the court considers the factor to be neutral.

III.    The Convenience of the Witnesses

"Courts generally view the convenience of witnesses as the single most important factor in the balance." Mears v. Montgomery, No. 02 Civ. 0407 (BSJ) (MHD), 2004 WL 964093, * (S.D.N.Y. May 5, 2004) (citing Pilates, Inc. v. Pilates Institute, Inc., 891 F.Supp. 175, 183 (S.D.N.Y. 1995)). To obtain a transfer based on convenience, the moving party must specifically list the witnesses on whom it intends to rely in the transferee district, along with a general statement of the topics on which each witness is expected to testify. Defendants have identified six CBP employees who work in Buffalo, in the Western District, and indicated that each has information related to agency policies and procedures relevant to border examinations generally as well as those conducted with the Plaintiffs in December 2004. Declaration of Seven Kim Ex. B. Defendants have also submitted a list of potential witnesses for the plaintiffs, a number of whom reside in Buffalo or Washington, D.C. Id. at Ex. A. Plaintiffs contend that defendants' list is incomplete, insofar as a number of the witnesses with knowledge of the policies and events giving rise to this action live or work in Washington,

5

D.C. Plaintiffs also argue that, in any event, deposition testimony is an adequate alternative to testimony at trial and could be taken in the district of the witnesses' residence. Finally, plaintiffs contend that because the non-party witnesses identified by defendants are federal employees and would bear no personal expense in connection with their testimony, the court should not give great consideration to their convenience.

While defendants could have provided a more detailed indication of the relative materiality of each witness's expected testimony, it is clear to the court that substantially all of the witnesses in this case live or work in the Western District or in Washington, D.C. See Crower v. Albany Law School of Union Univ., No. 04 Civ. 643 (DAB), 2005 WL 1606057, *2 (S.D.N.Y. July 8, 2005) ("[I]n cases where the events demonstrate that the majority of witnesses are located in the transferee district, it is unnecessary to submit a statement naming the witnesses who will specifically be inconvenienced by maintaining the present venue."). The witnesses from Washington, D.C. would be forced to travel to either the Eastern District or the Western District, and the court is not prepared to attach significance to the marginal difference in inconvenience in traveling from Washington, D.C. to Brooklyn as compared to Buffalo. Of greater significance, it is likely that not a single non-party witness resides in the Eastern District. The court thus finds this factor to weigh heavily in favor of transfer.

IV.     The Locus of Facts

"If the 'principal events occurred and the principal witnesses are located in another district,' the locus of facts provides a strong reason to transfer." Jones, 2002 WL 2003191 at 3 (quoting Berman v. Informix, 30 F.Supp. 2d 653, 658 (S.D.N.Y. 1998)). In the instant case, all of the events transpired in the Western District of New York. Plaintiffs contend that while

6

the detentions occurred in the Western District, "the critical facts to plaintiffs' claims likely occurred elsewhere, in Washington, D.C." as plaintiffs "challenge the policy or practice [established by officials at the Department of Homeland Security] of singling out individuals for non-routine border inspections based on their attendance at an Islamic religious conference." Plaintiffs' Brief at 39. Even if pertinent documentary and other evidence is available only in Washington, D.C., that fact would not weigh in favor of retaining venue in this district. All of the events that directly impacted the plaintiffs occurred in the Western District, and the existence of documents or other sources of proof in yet another district does not justify retaining venue in this district when none of the evidence is located here. "One party's residence in a chosen forum, without more connecting a case to that forum, is insufficient to keep a case in that forum." Watkins v. Harvard University, No. 89 Civ. 2602, 1989 WL 135181, *4 (E.D.N.Y. Nov. 3, 1989) (citations omitted). This factor weighs heavily in favor of transfer.

V.    The Plaintiffs' Choice of Forum

The plaintiff's choice of forum is ordinarily given significant weight and is disturbed only if the balance of convenience and justice weigh heavily in favor of defendant's proposed forum. Toy Biz, Inc. v. Centuri Corp., 990 F.Supp. 328, 330 (S.D.N.Y. 1998) (collecting cases). Ordinarily, where there is a material connection or significant contact between the forum and the events giving rise to the action or a plaintiff has chosen to litigate in his home forum, that choice is entitled to greater deference. Orb Factory, Ltd. v. Design Science Toys, Ltd., 6 F.Supp.2d 203, 210 (S.D.N.Y. 1998). "The weight given to a plaintiff's choice is greatly diminished, however . . . where significant operative events did not occur there."

7

Aktiengesellschaft, 2004 WL 1812821 at *7; Jones, 2002 WL 2003191 at *3 ("The weight given to plaintiff's choice is also less when the operative facts have little connection to the forum.") (citation omitted); United States Fidelity and Guaranty Co. v. Republic Drug Co., Inc., 800 F.Supp. 1076, 1082 (E.D.N.Y. 1992) ("[W]here the transactions or facts giving rise to the action have no material relation or significant connection to the plaintiff's chosen forum, then the plaintiff's choice is not accorded the same 'great weight' and, in fact, is given reduced significance.") (citations omitted); Watkins, 1989 WL 135181 at *2 ("If . . . no material connection exists between plaintiff's initial choice of forum and the events giving rise to plaintiff's complaint, little weight should be given to the plaintiff's choice of forum."). As discussed above, the instant case is devoid of any nexus to the Eastern District aside from the fact that one of the five plaintiffs resides here. As a result, the court accords some weight to plaintiffs' choice of forum, and finds that it weighs against transfer, but the court does not give that choice great deference.

VI.   The Forum Court's Familiarity with Governing Law

The plaintiffs' complaint raises issues of federal law, with which this court and the Western District are equally familiar. This factor is thus neutral.

VII.   Calendar Congestion

The parties have submitted evidence comparing the dockets in the Eastern and the Western Districts. Statistics compiled by the Administrative Office of the United States Courts indicate that judges in the Eastern District have, on average, 536 pending cases while judges in

the Western District have, on average, 603 pending cases.[1]  Those statistics also indicate that the median time interval from filing to trial in civil cases is thirty-three months in the Eastern District as compared to forty months in the Western District.  Courts in this circuit typically accord this factor and such statistics relatively little weight.  Aktiengesellschaft, 2004 WL 1812821 at *7.  In any event, the court does not find the differences in average docket loads and median periods for conclusion of civil cases between the two districts to be significant.  The court considers the factor to weigh, if at all, only slightly in favor of retaining the case.

VIII.   Interests of Justice

Plaintiffs claim that the defendants delayed in bring their transfer motion and that, in light of the expedited proceedings in this district, transferring the case would not be in the interest of justice.  "Although delay can be a factor in the Court's determination, there is no per se rule prohibiting a change of venue merely because a motion to transfer is filed some time after suit is commenced and some progress is made on the pre-trial phase of the case."  Republic Drug Co., Inc., 800 F.Supp. at 1082 (citations and internal quotations omitted).  Morever, "[i]n determining a motion to transfer venue made after what the non-movant contends is a delay, courts have looked to see if the non-movant would be prejudiced by a transfer."  Id.

Plaintiffs filed their complaint on April 20, 2005, over four and one-half months after the events underlying the action occurred.  Under the Federal Rules of Civil Procedure, defendants had until June 27, 2005 to file an answer or otherwise respond.  The court granted

---

[1]These figures represent weighted averages.  Unweighted, the average docket size in the Western District is 739 cases, compared to 514 in the Eastern District.

defendants' motion for a thirty-day extension to respond, and defendants filed a letter with the court on July 20, 2005 requesting permission to bring a motion to dismiss or, alternatively, to change venue. By order dated July 21, 2005, the court established an expedited briefing schedule so that the parties would know in a timely manner where they would be litigating the case. Magistrate Judge Matsumoto conducted the first discovery conference in this case on July 28, 2005, and the court has endeavored to consider defendants' motion as expeditiously as possible.

In light of the foregoing, the court does not find that the defendants moved to transfer venue following a delay or that the non-movant would be prejudiced by a transfer. None of the cases cited by plaintiffs suggests that a contrary finding would be appropriate. Brennan v. Straub, No. 02 Civ. 7655 (RWS), 2003 WL 21313841, *2 (S.D.N.Y. June 9, 2003) (considering a motion, not under section 1404(a), to transfer the case from one courthouse in the Southern District to another and determining that defendants had delayed in requesting transfer because seven months had passed since the commencement of the action and the court had already decided defendant's motion to dismiss); Lesser v. Wildwood, No. 01 Civ. 4209 (RWS), 2002 WL 1792039, *7 (S.D.N.Y. Aug. 2, 2002) (finding that defendants had delayed in moving to transfer venue when the motion was made approximately eleven months after the case was commenced, discovery was well underway, and the court had held a pre-trial conference); United States v. Keuylian, 602 F.2d 1033, 1038 (2d Cir. 1979) (considering the appeal from a criminal defendant's motion to transfer under Fed. R. Crim. P. 21(b) and determining that the motion had come too late, "virtually on the eve of trial," and would have required another judge and another Assistant United States Attorney to familiarize themselves

10

with the case). Defendants have not delayed in seeking transfer to the Western District, and the court sees no possible prejudice to the plaintiffs that could result from the transfer. While the court recognizes that the case is time-sensitive, the court sees no reason why a judge in the Western District would not expedite the case as this court has endeavored to do. As a result, the court will not consider the timing of defendants' motion whatsoever in making its determination.

Plaintiffs have also argued that retaining venue in this district would be most convenient to them because they are represented by pro bono counsel with offices in New York City. As noted above, courts typically do not consider the convenience to counsel when determining whether to transfer venue. Courts that have factored counsel into the section 1404(a) analysis typically have not considered this in analyzing the convenience to the parties, but rather when evaluating the relative means of the parties or the interests of justice. The cases cited by plaintiffs are not sufficiently relevant to the facts of the instant case to warrant giving this factor any weight. In Mears v. Montgomery, the Southern District declined to transfer the case to the Eastern District of Pennsylvania, having considered that plaintiff was "a self-employed individual of modest income" and that transferring the case would force upon him the "expense of acquiring local counsel" there. No. 02 Civ. 0407 (BSJ) (MHD), 2004 WL 964093, *11 (S.D.N.Y. May 5, 2004). In Miller v. County of Passaic, New Jersey, the Eastern District declined to transfer plaintiff's suit against New Jersey officials over New Jersey state prison practices having concluded that plaintiff could not appear in court in New Jersey as a then-incarcerated New York state prisoner. 699 F.Supp. 409, 411 (E.D.N.Y. 1988). The court went on to note that it had already appointed counsel to represent plaintiff and that counsel

11

would "have difficulty representing his client in New Jersey." Id. In Miller v. National Broadcasting Co., Inc., the plaintiff, who previously had pleaded guilty to robbery, sued NBC in the District of Delaware and the American Tobacco Company ("ATC") in the Southern District of New York for NBC's presentation and ATC's sponsorship of a televised, dramatic reenactment of the robbery without plaintiff's consent. 143 F.Supp. 78 (D. Del. 1956). The court denied NBC's motion to transfer the case to the Southern District, having considered that plaintiff was without means to retain counsel in New York, that plaintiff's request for appointment of counsel had been denied in the action against ATC, and that, as a result, plaintiff would be unable to prosecute the action properly if the case were transferred to New York. Id. at 80. Finally, in United Steelworkers of America v. Marshall, the Third Circuit considered the appropriate court to review a regulatory agency's action when similar petitions for review had been filed in two other Courts of Appeals. 592 F.2d 693 (3d Cir. 1979). The court, noting that review in such cases is "confined to the agency record" and that no witnesses would appear in court, stated that "[t]he only significant convenience factor which affects petitioners seeking review of rulemaking on an agency record is the convenience of counsel who will brief and argue the petitions." Id. at 697. These cases need not be analyzed at length. It suffices to say that this is neither a case where the convenience of counsel is a primary consideration nor one in which plaintiffs would be financially unable to retain counsel in the transferee district. Rather, plaintiffs are represented by a national organization with a regional office in Buffalo, New York, in the Western District. The court thus accords no weight to the convenience of counsel.

Balancing all of the factors set forth above, the court finds that the interests of justice would be best served by transferring this case to the Western District of New York. The convenience to the parties and the non-party witnesses and the locus of the facts in the Western District outweigh the plaintiffs' choice of this district and the marginal difference in docket congestion between this district and the Western District. This is especially so given that the latter factors receive reduced weight where there is no nexus between the forum and the facts giving rise to the action.

## CONCLUSION

For the foregoing reasons, the court grants defendants' motion to transfer venue. The case is hereby transferred to the United States District Court for the Western District of New York.

SO ORDERED.

Allyne R. Ross
United States District Judge

Dated: August 11, 2005
        Brooklyn, New York

13

SERVICE LIST (By Fax and Mail):

<u>Attorney for Plaintiffs</u>
Christopher T Dunn
NY Civil Liberties Union
125 Broad Street
17th Floor
New York, NY 10004

Catherine Yonsoo Kim
ACLU, National Legal Department
125 Broad Street
18th Floor
New York, NY 10004

<u>Attorney for Defendants</u>
Steven J. Kim
United States Attorneys Office
One Pierrepont Plaza
Brooklyn, NY 11201

cc:       **Magistrate Judge Matsumoto**